**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 09-cv-02930-CMA-KLM

JOSEPH C. PADILLA,

     Plaintiff,

v.

CITY AND COUNTY OF DENVER,

     Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

     This matter comes before the Court on Defendant City and County of Denver's Motion for Summary Judgment filed on October 4, 2010. (Doc. # 37.) For the following reasons, Defendant's Motion is granted.

## I. BACKGROUND

### A. PROCEDURAL HISTORY

     This action arises from Defendant's failure to promote Plaintiff Joseph C. Padilla on various occasions to command positions. On December 15, 2009, Plaintiff filed his original Complaint in this Court alleging that Defendant violated Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981 by denying Plaintiff employment opportunities on the basis of his race. (Doc. # 1.) On February 2, 2010, Plaintiff sought leave to amend the original Complaint (Doc. # 14), which was granted on February 18, 2010, by Magistrate Judge Kristen L. Mix. (Doc. # 16.) Plaintiff filed the Amended Complaint on February 18, 2010. (Doc. # 17.) On October 4, 2010, Defendant filed the

instant Motion for Summary Judgment.  (Doc. # 37.)  Plaintiff responded on December

3, 2010 (Doc. # 42) and Defendant replied on December 27, 2010 (Doc. # 45.)

Jurisdiction over Plaintiff's claims is proper pursuant to 28 U.S.C. §§ 1331 and 1343.

**B.    FACTS[1]**

    1.    <u>Plaintiff's Work History</u>

    Plaintiff is a Hispanic male employed by Defendant as a police officer.  Before his

employment with Defendant, Plaintiff worked as a police officer for Northglenn Police

Department from 1977 to 1979.  Between 1979 and 1984, Plaintiff was employed by

Westminster Police Department.  On March 16, 1984, Plaintiff was hired by Defendant

as a police officer.

    Plaintiff has received the following promotions during his employment with

Defendant: (1) Detective in 1989; (2) Sergeant in 1993; (3) Lieutenant in 1997; and (4)

Captain of the Gang Bureau in 2001. In 2004, Plaintiff was reassigned as Captain of the

Special Operations Bureau.  In 2007, Plaintiff was reassigned to the position of Captain

of the Traffic Operations Bureau.

    2.    <u>Performance Evaluations of Plaintiff</u>

     During Plaintiff's assignment to the Gang Bureau, he was supervised by Daniel

O'Hayre ("O'Hayre") and Steven Cooper ("Cooper"), Division Chiefs of Patrol.  In 2001,

O'Hayre evaluated Plaintiff as competent in all categories.  (Doc. # 42-1.)  For his

performance during 2003, Cooper evaluated Plaintiff as "competent" in three categories,

---

    [1]  Unless otherwise noted, the following facts are undisputed and taken from the parties'
briefs and attached exhibits.

but indicated that Plaintiff "needs improvement" in two categories.  (Doc. # 37-3.)

Cooper gave Plaintiff an overall evaluation of "needs improvement." (*Id.*)  Plaintiff

received the same overall and individual category ratings from Cooper for his

performance during the first half of 2004.  (Doc. # 37-4.)  Subsequently, Plaintiff

appealed Cooper's evaluations to Police Chief Gerald Whitman ("Whitman").  (Doc.

# 37-5.)  Whitman changed Plaintiff's overall performance evaluation ratings for 2003

and the first half of 2004 from "needs improvement" to "competent," however, Whitman

did not alter any of the individual ratings of Plaintiff in the various categories.  (Doc.

# 37-6.)

Chief Mary Beth Klee ("Klee") supervised and evaluated Plaintiff at the Special

Operations Bureau from 2004 to 2006.  For his work during 2005, Klee evaluated

Plaintiff as "excellent" in the following categories: (1) interpersonal skills, (2) com-

munication skills, (3) supervision and leadership skills, and (4) administrative and

management skills.  (Doc. # 42-6.)  Klee evaluated Plaintiff as competent in the

community interaction category.  (*Id.*)[2]

From 2007 to 2009, Plaintiff worked in the Traffic Operations Bureau where

Division Chief David Quinones ("Quinones") supervised and evaluated him.  Quinones

is a Hispanic male who was appointed to Division Chief at the beginning of 2007.  For

the time period of January 1, 2007 to July 14, 2007, Quinones evaluated Plaintiff as

excellent in the following categories: (1) interpersonal skills, (2) community interaction,

and (3) supervision and leadership skills.  (Doc. # 42-7 at 1-9.)  Quinones evaluated

---

[2]  Neither party has provided the Court with copies of Plaintiff's 2006 evaluations.

Plaintiff as competent in communication skills and omitted a rating in the category of administrative and management skills. (*Id.*)  For the period of July 15, 2007 to December 31, 2007, Quinones gave Plaintiff the same evaluations as in the first half of 2007, but rated Plaintiff as excellent in the category of administrative and management skills. (Doc. # 42-7 at 9-17.)  For Plaintiff's work in 2008, Quinones evaluated Plaintiff as excellent in all review categories, however, he did not rate Plaintiff in the category of administrative and management skills. (Doc. # 42-8.)  For Plaintiff's work in 2009, Chief Quinones evaluated Plaintiff as excellent in all review categories. (Doc. # 42-9.)

     3.    <u>Employment Decisions Forming the Basis of Plaintiff's Claims</u>

In his Amended Complaint, Plaintiff alleges disparate treatment under Title VII, arguing that Defendant denied him promotions on seven occasions because of his ethnic background. (Doc. # 17, ¶ 34.)  Additionally, Plaintiff claims that Defendant is liable under 42 U.S.C. § 1983 for violating 42 U.S.C. § 1981 by failing to implement proper procedures to prevent discrimination on the basis of race and by discriminating against Plaintiff on the basis of his race in the following seven promotional decisions. (Doc. # 17, ¶ 50.)

1.    In June of 2004, Lieutenant Rhonda Jones ("Jones"), a Caucasian woman, was appointed to the rank of Commander ("Decision # 1").  Plaintiff believes himself to have been better qualified for this position because he had a higher civil service rank than Jones. (Doc. # 42 at 8.)

2.    In June of 2006, Lieutenant Lisa Fair ("Fair"), an African American female, was appointed to the rank of Commander ("Decision # 2").   Plaintiff believes himself to have been better qualified for this position because Plaintiff had a higher civil service rank than Fair. (Doc. # 42 at 8.)

3.      In January 2007, Plaintiff was denied the opportunity to apply for the position of Division Chief because only individuals holding command ranks were permitted to apply ("Decision # 3").   (Doc. # 42-2 at 184:1-7.)   (Doc. # 37-11.)

4.      On April 17, 2007, Whitman selected Captain Doug Stephens ("Stephens") for the position of Commander of District One ("Decision # 4").  In March of 2007, Plaintiff and approximately 20 other applicants (Doc. # 42-2 at 207:24-208:3) whose ranks were at or above lieutenant first interviewed with the Citizen Advisory Panel ("CAP").[3]  (Doc. ## 42-11, 42-12, 42-13, 42-14, and 42-15.) Stephens received an overall rating of "not acceptable" from one of the citizens on the CAP.  (Doc. ## 42 -3 at 142:20-25, 42-15 at 54.)  Following the CAP interview, Whitman consulted Commanders, Division Chiefs and Deputy Chiefs for recommendations of each candidate based on experience, internal effectiveness, management skills, and administrative skills.  (Doc. ## 37-13 and 37-14.)  Stephens was unanimously recommended by all six chiefs and five commanders for the position.  (Doc. # 37-14.)  Only one of six chiefs and one of five commanders recommended Plaintiff for the position.  (*Id.*)  The last step in the selection process was an interview with Whitman who interviewed only seven of the twenty-one applicants interviewed by the CAP.  Of those seven individuals interviewed, two were Hispanic, two were African-American and three were Caucasian.  (Doc. 42-2 at 205:15-206:15.)  Plaintiff was not chosen by Whitman to participate in the final interview.  Stephens was ultimately selected for the position, however, Plaintiff asserts that Stephens was less qualified than he was because Stephens was previously involved in a civil lawsuit in which a jury found against Stephens on an excessive force/wrongful death claim.  (Doc. # 42-16 at 7.)

---

[3]  The parties have failed to adequately describe the CAP and the role it played in the selection process of the District One Commander.  However, it appears that the panel was composed of citizens of District One who had no knowledge of the applicants' work experience, nor any law enforcement experience themselves.  (Doc. # 45 at 8.)  The CAP played a merely advisory role in the selection process of the Commander of District One; the input of the CAP may have been taken into consideration in the selection process, but it was not a defining factor in the ultimate decision, which was made by Whitman.  (Doc. # 42-2 at 201:1-18.)  The CAP evaluated the applicants' qualities as acceptable or unacceptable.  The qualities evaluated fell into five broad categories: 1) leadership/vision, (2) community relations, (3) critical thinking, (4) dedication/flexibility, and (5) integrity.  (Doc. # 37-13.) The evaluations were based on candidates' responses to seven questions: (1) what qualifies you for the District One position? (2) what do you know about the neighborhoods of District One? (3) why do you want the position of Commander of District One?/What programs or initiatives will you implement? (4) how would you reduce the tension in District One? (5) how would you ensure the safety and success of community events? (6) what is the role of the police in ensuring the quality of life in Denver? and (7) how would you respond to a hypothetical scenario?  (Doc. # 42-11.)

In April 2008, Whitman made three appointments[4] which Plaintiff asserts constitute discrimination against him because he was the most qualified person for the job.  In making these three selections, Whitman considered the CAP evaluations and the internal recommendations of the 21 candidates who interviewed for the position of Commander of District One in March of 2007.

5.   In April 2008, Whitman appointed Captain John Burbach ("Burbach") to Commander of the Internal Affairs Bureau ("Decision # 5").  Plaintiff asserts that he was better qualified than Burbach because Burbach received four "not acceptable" ratings from the CAP while Plaintiff received only one "not acceptable" rating and Plaintiff had more medals and commendations than Burbach.  (Doc. ## 42-3 at 140:14-142:19, 42-11, 42-12, 42-13, 42-14, and 42-15.)  However, four out of six chiefs and three out of five commanders recommended Burbach.  (Doc. # 37-14 at 1,3.)  Only one of six chiefs and one of five commanders recommended Plaintiff.  (*Id.*)  In addition, Burbach had experience working at the Internal Affairs Bureau, whereas Plaintiff did not have that experience.  (Doc. # 37 at 8.)

6.   In April 2008, Whitman appointed Captain Tracie Keesee ("Keesee"), an African American female, to Division Chief ("Decision # 6").  Plaintiff asserts that he was better qualified for this position because he had more medals, letters of appreciation and patrol bureau experience than Keesee.  At the time of her appointment to Division Chief, Keesee held a higher position than Plaintiff.  Keesee had five years of experience as a Commander of two districts – Districts Three and Five.

7    In April 2008, Whitman appointed Captain Kris Kroncke ("Kroncke"), a Caucasian male, to Commander of District Three ("Decision # 7").  Plaintiff asserts that he was better qualified for this position because he had received a higher CAP score than Kroncke in 2007.  Four of nine CAP members gave Kroncke an overall rating of "not acceptable" during the selection process for Commander of District One in 2007.  Between the 2007 CAP evaluations and Kroncke's appointment to Commander, Kroncke, who had sixty-two letters of appreciation and sixteen commendatory letters (Doc. # 42-10 at 5), was promoted to the civil

---

[4]  In April of 2008, Whitman also appointed John Lamb, a Caucasian male, to Deputy Chief; however, Plaintiff does not challenge this appointment as discriminatory because he does not claim to be more qualified for this position than Lamb.  (Doc. # 37-2 at 224:6-9.)

service rank of Captain.  (Doc. # 42-3 at 157:20-164:19.)  Quinones and Chief John Lamb recommended Kroncke for the District Three Commander position.

4.    EEOC Charges[5]

On July 12, 2006, Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination ("July 2006 EEOC Charge"), alleging that Defendant discriminated against him on the bases of race and disability by denying Plaintiff training and transfer opportunities.  (Doc. # 37-10.)

On February 23, 2007, Plaintiff filed a second EEOC Charge of Discrimination ("February 2007 EEOC Charge") alleging that Defendant failed to promote Plaintiff to Division Chief because of his national origin and his disability.

In April 2007, Plaintiff filed another EEOC Charge of Discrimination ("April 2007 EEOC Charge") alleging that Whitman's failure to promote him was made on the basis of his race.[6]

Plaintiff alleges that, in May 2008, he amended his April 2007 EEOC Charge to include discrimination and retaliation charges against Defendant for failing to promote Plaintiff to the positions to which Kroncke, Keesee, Lamb, and Burbach were appointed. Plaintiff received Notices of Right to Sue on his EEOC charges on October 7, 2009 and October 13, 2009.  (Doc. # 17 at 2.)

---

[5]  Although Plaintiff claims to have filed EEOC charges on January 31, 2007 and February 8, 2007 (Doc. # 17, ¶ 24), Plaintiff has not provided the Court with a copy of those charges.  Because the Court could not find any evidence of the filing of these two charges, the Court will limit its discussion to the EEOC charges for which evidence has been provided.

[6]  Plaintiff does not provide the Court with a copy of the April 2007 EEOC charge, however, Defendant does not contest that this charge was filed.

## II. <u>DISCUSSION</u>

### A.   STANDARD OF REVIEW

The purpose of a summary judgment motion is to assess whether trial is necessary.  *See Celotex Corp. v. Catrett*, 477 U.S 317, 323 (1986).  Fed. R. Civ. P. 56(c) provides that summary judgment shall be granted if "the pleadings, the discovery and disclosure of materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson*, 477 U.S. at 252.

"The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323).  The "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] by simply pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."  *Id.* at

671.  After the movant has met its initial burden, the burden shifts to the nonmovant

to put forth sufficient evidence for each essential element of the claim such that a

reasonable jury could find in its favor.  *See Anderson*, 477 U.S. at 248; *Simms v. Okla.*

*ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th

Cir. 1999).  The nonmovant must go beyond the allegations and denials of his pleadings

and provide admissible evidence[7] which, as mentioned, the Court views in the light most

favorable to the nonmovant.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157

(1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing

*Celotex*, 477 U.S. at 324).  However, conclusory statements based merely on

conjecture, speculation, or subjective belief are not competent summary judgment

evidence.  *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

## B.    ANALYSIS

Plaintiff alleges that, as a result of the aforementioned seven employment

decisions, he was treated disparately and denied promotions on the basis of his ethnic

background.[8]  (Doc. # 17, ¶ 34.)  Additionally, Plaintiff claims that Defendant is liable

under 42 U.S.C. § 1983 for violating 42 U.S.C. § 1981 by failing to implement proper

---

[7]  While the parties need not present evidence "in a form that would be admissible at trial, [ ] the content or substance of the evidence must be admissible." *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 485 (10th Cir. 1995).

[8]  Although Defendant, in its Motion for Summary Judgment, presents arguments in connection with a retaliation claim, Plaintiff has not asserted a retaliation claim in the Complaint (Doc. #1) or in the Amended Complaint (Doc. #17).  Nevertheless, in opposition to Defendant's Motion, Plaintiff has presented arguments in support of a retaliation claim.  Accordingly, as discussed later, the Court will deem Plaintiff's briefing an amendment to the Complaint, and the Court will address the merits of Plaintiff's retaliation claim.

procedures to prevent discrimination on the basis of race and by discriminating against Plaintiff on the basis of his race in promotional decisions.  (Doc. # 17, ¶ 50.)  The Court will address each claim in turn.

1.    Title VII

Title VII prohibits an employer from discriminating against any individual on the basis of race, color, religion, sex, or national origin.  42 U.S.C. § 2000e, *et. seq.*  Before the court reaches the merits of Plaintiff's disparate treatment claims, the Court must determine whether Plaintiff has exhausted his administrative remedies on his Title VII claims.

a)    *Jurisdictional Prerequisites*

Defendant asserts that Plaintiff's Title VII claims challenging promotional decisions in 2004 and 2008 are barred for failure to exhaust administrative remedies.  Specifically, Defendant asserts that Plaintiff failed to file EEOC charges within three-hundred days of those alleged adverse employment actions.  (Doc. # 37 at 10.)  Having reviewed the record, the Court finds that Plaintiff exhausted his administrative remedies for his 2007 claims, concerning Decision ## 3 and 4.  However, Plaintiff has not exhausted his administrative remedies for his 2004, 2006 and 2008 failure to promote claims, which arise from Decision ## 1, 2, 5, 6, and 7.  Therefore, the Court does not have jurisdiction to hear those claims.

Filing an EEOC charge within three-hundred days of an alleged adverse employment action is an administrative prerequisite to a suit filed under Title VII. *See* 42

U.S.C. § 2000e-5(e)(1); *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1409 (10th Cir. 1997).

"A failure to file an administrative Title VII claim before bringing suit is jurisdictionally

fatal." *Mitchell v. City & Cnty. of Denver*, 112 F. App'x 662, 666 (10th Cir. 2004).  Each

discrete act of discrimination constitutes its own unlawful employment practice for which

administrative remedies must be exhausted before the Court can properly hear those

claims. *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003) (citing *Nat'l R.R.*

*Passenger Corp. v. Morgan*, 536 U.S. 101, 110-13 (2002)).  Separate EEOC charges

must be filed for discrete acts such as failure to promote or denial of transfer, which

constitute separate actionable unlawful employment practices.  *Nat'l R.R. Passenger*

*Corp.*, 536 U.S. at 114; *Martinez*, 347 F.3d at 1210.

Plaintiff's first EEOC charge, filed on July 12, 2006, alleged the following

continuing violation of Title VII:

> Beginning before October 1, 2005 and continuing, I have been subjected
> to different terms and conditions of employment to include being denied
> training, transferred to my current position and disciplined which have
> affected my ability to be promoted.  I have been denied transfer to
> positions which I was qualified and applied for positions that would
> have facilitated (my) promotions. Instead non-Hispanic, non-disabled
> individuals were selected over me.

(Doc. # 37-10.)  First and foremost, the Tenth Circuit has consistently interpreted

*Morgan* to forbid the application of a continuing violation theory to discrete incidents of

discrimination.  *Martinez*, 347 F.3d at 1211; *see also Davidson v. Am. Online, Inc.*, 337

F.3d 1179, 1184 (10th Cir. 2003).  On its face, this EEOC charge could not pertain to

Decision # 1 because Plaintiff limited the first date of alleged discrimination to October

11

1, 2005.  In any event, Decision # 1 occurred in June 2004, more than three-hundred days before Plaintiff filed his EEOC charge.  Additionally, this charge could not pertain to Decision ## 3-7, which were made in 2007 and 2008, subsequent to July 12, 2006.

Additionally, this July 2006 EEOC Charge is inadequate to exhaust Plaintiff's administrative remedies for the one employment decision for which the charge was timely filed, Decision # 2.  The July 2006 EEOC Charge does not contain the elements that 29 C.F.R. § 1601.12 requires each EEOC charge to contain.  Specifically, Plaintiff has failed to include "[a] clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices."  29 C.F.R. § 1601.12(a)(3).  Plaintiff's July 2006 EEOC charge makes no reference to Defendant's failure to let him compete for a promotion, much less to the date or title of the position.  Thus, it is unclear as to whether, and unlikely that, the EEOC investigated Decision # 2 and provided Defendant notice of the alleged violation.  *See, e.g. Sandle v. Nicholson*, No. 03-cv-02435, 2006 WL 2943052, at *4 (D. Colo. Oct. 13, 2006) (unpublished) (finding that an EEOC charge containing a reference to the defendant's specific action of placing the plaintiff on leave without pay on a specific date conveyed the Plaintiff's claims with sufficient specificity).

Plaintiff filed his second EEOC charge on February 23, 2007,[9] alleging the following violations of Title VII:

---

[9] Although in the Amended Complaint Plaintiff alleges that he filed his second EEOC charge on February 8, 2007, Defendant has presented the Court with a copy of the EEOC charge, which was signed on February 23, 2007.  (Doc. # 37-11.)   Plaintiff does not dispute this filing date in the Response, nor does Plaintiff provide any evidence to the contrary.

> Since filing the above-mentioned charge of discrimination [the July 2006
> EEOC Charge], my employer has retaliated against me . . . In January
> 2007, I was denied the opportunity to be considered for and interviewed
> for the vacant position of Division Chief and Commander.  As a result, my
> employer selected less qualified candidates not in my protected group.

 (Doc. # 37-11.)  This February 2007 EEOC Charge was adequate to exhaust Plaintiff's

administrative remedies regarding his claims concerning Decision # 3.  As previously

noted, however, although Plaintiff asserted a retaliation claim in his EEOC filing, the

Amended Complaint does not include a retaliation claim.  Moreover, Plaintiff admits in

his deposition that he was allowed to compete for the position of Commander.  (Doc.

# 42-2 at 135:1-7.)  Thus, Plaintiff's own admission obliterates the retaliation claim he

would have had.

    Plaintiff filed his third EEOC charge in April 2007, following the promotion of

Stephens to Commander on April 17, 2007.  Although Plaintiff does not provide the

Court with a copy of that particular EEOC charge, Defendant does not contest that

Plaintiff has exhausted his administrative remedies regarding Decision # 4, the April 17,

2007 failure to promote.

    Plaintiff alleges that he filed an amendment to his previous EEOC charges on

May 20, 2008, to include charges of discrimination based on Decision ## 5, 6, and 7,

namely Defendant's failure to promote him to the positions to which Keesee, Burbach,

Kroncke, and Lamb were appointed in April 2008.  The Court notes that the case

number listed for this amendment is case number 541-2006-01479, relating to Plaintiff's

July 2006 EEOC Charge, and not case number 541-2007-01054, relating to Plaintiff's

April 2007 EEOC Charge.   Although Plaintiff has provided a copy of the amended

EEOC charge (Doc. # 42-20),[10] the Court notes that this EEOC charge, unlike the

others, does not bear a time and date stamp indicating receipt by the EEOC.

Additionally, Defendant has provided the EEOC case log for the case under which the

amendment was allegedly filed, case number 541-2006-01479.  The case log contains

a detailed history of all of Plaintiff's filings and conversations with the EEOC, but does

not indicate that an amendment was filed.  (Doc. # 45-13.)  Because Plaintiff has failed

to present credible evidence[11] that he actually filed this amended EEOC Charge, the

Court finds that Plaintiff has not exhausted his administrative remedies with regard to

Decision ## 6 and 7.

       Based on the foregoing, the Court finds that it does not have jurisdiction to hear

Plaintiff's claims concerning Decision ## 1, 2, 5, 6, and 7, but has jurisdiction over

Plaintiff's claims from 2007 concerning Decision ## 3 and 4, the merits of which the

Court will address below.

              b)      *The Burden-Shifting Framework*

       To prevail on a claim of discrimination under Title VII, a plaintiff must prove by

a preponderance of the evidence that the defendant engaged in intentional

---

       [10]  Plaintiff points the Court to Exhibit 17 as evidence that he amended his 2007 charge,
however, Exhibit 17 contains nothing about an amended charge.  Rather, it is Plaintiff's Exhibit
20 that contains a copy of the amended charge.  (*Compare* Doc. # 42-17 *with* Doc. # 42-20.)

       [11]  The Court notes that Plaintiff has also failed to provide the Court with copies of his
Notices of Right to Sue, which might indicate the claims on which Plaintiff had received the right
to sue.

discrimination.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).  A plaintiff may

prove intentional discrimination by either direct or circumstantial evidence.  *Id.*  In the

instant case, Plaintiff relies on circumstantial evidence of discrimination.  Therefore, the

Court applies the three-step analysis set forth in *McDonnell Douglas Corp. v. Green,*

411 U.S. 792 (1973), to determine whether Plaintiff can prevail on a claim of

discrimination under Title VII.  *See also Kendrick v. Penske Transp. Servs. Inc.*, 220

F.3d 1220, 1226 (10th Cir. 2000).  The first step of the three-step analysis requires the

plaintiff to establish a prima facie case.  In failure to promote or failure to transfer cases,

such as this, a plaintiff may establish a prima facie case of discrimination under Title VII

by showing that: (1) he is a member of a protected class; (2) he applied for and was

qualified for the particular position; (3) he was not promoted or transferred despite his

qualifications; and (4) the position was filled or remained open after he was rejected.

*Jaramillo v. Colo. Judicial Dept.*, 427 F.3d 1303, 1306-07 (10th Cir. 2005).  A presump-

tion of discrimination arises where a plaintiff establishes a prima facie case.  *Id.* at 1307.

If the plaintiff meets the burden of establishing a prima facie case, the burden shifts to

the defendant to articulate a legitimate, nondiscriminatory reason for the employment

decision.  *Id.*  If the defendant satisfies this burden, then the burden shifts back to the

plaintiff to show that the defendant's proffered reasons are pretextual.  *Id.*

(i)   *Plaintiff's Prima Facie Case of Discrimination*

Plaintiff asserts that he suffered adverse employment decisions, namely

Defendant denied him promotions, due to his national origin.  Defendant concedes that

Plaintiff has established a prima facie case of discrimination under Title VII.  (Doc. # 37

15

at 11.)  Therefore, the present inquiry of the Court will focus on (1) whether Defendant

has provided a legitimate, non-discriminatory reason for Decision ##3 and 4 and, if so

(2) whether Plaintiff has demonstrated that Defendant's reason for the employment

decisions are pretext for unlawful discrimination.[12]

(ii)    <u>*Defendant's legitimate, non-discriminatory reason*</u>

With respect to Decision # 3, the record does not support Plaintiff's allegation

that Defendant denied Plaintiff the opportunity to apply for the position of Division Chief

for discriminatory reasons.  First, Plaintiff admits that only individuals holding command

positions were allowed to compete for the Division Chief promotion, and Plaintiff did

not have a command position.[13]  (Doc. # 42-2 at 184:15-186:11.)  More importantly,

Defendant chose a man of Hispanic origin for the position.  (Doc. # 37-2 at 183:3-

184:11.)  Thus, Defendant's reasons for Decision # 3, which concerned Plaintiff's

inability to apply for the Division Chief position, were legitimate (Plaintiff was not

qualified to apply) and non-discriminatory (a candidate of Plaintiff's racial background

was chosen for the position).

With respect to Decision # 4, in which Defendant denied Plaintiff a promotion to

the position of Commander of District One in March of 2007, the evidence provided

---

[12]  Defendant concedes that Plaintiff has established a *prima facie* case with respect to both Decision ## 3 and 4.  With respect to Decision # 3, for the reasons set forth in the next section, the Court seriously questions whether Plaintiff has established a *prima facie* case because the circumstances surrounding Decision # 3 do not give rise to an inference of discrimination.  *Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1173 & n.5 (10th Cir. 2005).

[13]  The mere fact that Plaintiff might disagree with Defendant's selection process is not relevant to his claim of racial discrimination.

indicates that more Chiefs, District Chiefs, and Commanders recommended Stephens, the individual who was appointed to Commander of District One, than recommended Plaintiff.  Defendant also supplied evidence in the form of affidavits of Plaintiff's supervisor at the time, Quinones, and Plaintiff's former supervisor, Klee.  The affidavits state that Klee and Quinones both recommended Stephens, not Plaintiff, for the position.  In his deposition, Whitman, the final decision maker regarding the promotion, testified that based on the CAP scores, recommendations from peers and supervisors, and past performance evaluations of the candidates, he determined that Stephens was the most qualified candidate for the position.  (Doc. # 37-13 at 1.)

Based on the foregoing, the Court finds that Defendant satisfied its burden of presenting a legitimate, non-discriminatory reason for Decision # 4.  The burden thus shifts back to Plaintiff to demonstrate that Defendant's proffered reasons are pretextual.

(iii)   _Pretext_

To survive summary judgment after the defendant has presented evidence of a legitimate, non-discriminatory reason for the employment decision, the plaintiff must show that the defendant's proffered reason was pretextual.

A plaintiff can demonstrate pretext by revealing "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action [such] that a reasonable fact finder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reason."  _Morgan v. Hilti, Inc._, 108 F.3d 1319, 1323 (10th Cir. 1997)

(citations and quotations omitted).  Plaintiff may do so by providing evidence of "prior treatment of plaintiff; the employer's policy and practice regarding minority employment (including statistical data); disturbing procedural irregularities (*e.g.*, falsifying or manipulating . . . criteria); and the use of subjective criteria."  *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1217 (10th Cir. 2002) (quoting *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321,1328 (10th Cir. 1999)).

A court may not "act as a super personnel department that second guesses employers' business judgments."  *Simms*, 165 F.3d at 1330.  The plaintiff bears the burden of showing that "each reason given by the employer is unworthy of credence." *Jaramillo v. Colo. Judicial Dept.*, 427 F.3d 1303, 1308 (10th Cir. 2005) (quoting *Morgan*, 108 F.3d at 1323).  As long as the employer could have believed in good faith that the employee promoted was at least as well qualified as the plaintiff, a reasonable jury could not find that the employer's explanation for the promotion was pretext for unlawful discrimination.  *Id.*

Plaintiff proffers multiple arguments to support the assertion that Defendant's proffered reasons for failing to promote him are pretextual.  The Court, however, finds that Plaintiff has failed to supply sufficient evidence to support those assertions of pretext.  The Court will address Plaintiff's pretext arguments for Decision ## 3 and 4 in turn.

(a)     *Decision # 3: 2007 Division Chief Promotion*

Plaintiff provides no evidence to support his contention that Defendant denied

him the opportunity to compete for the Division Chief position in January 2007 based on

his race or national origin.  Defendant's ultimate selection of a Hispanic candidate is

most fatal to Plaintiff's claim of pretext.  That the position was only available to

candidates in command positions, which did not include Plaintiff, further undermines

Plaintiff's pretext claim.  Therefore, the Court finds that Plaintiff has failed to establish

that Defendant's proffered reason for Decision # 3 was pretext (*i.e.*, that the reason was

implausible, incoherent, or contradictory).

(b)     *Decision # 4: 2007 District One Commander Position*

Plaintiff asserts that Defendant's proffered reasons for Decision # 4 (selecting

Stephens for the promotion to District One Commander in 2007) were pretext for

unlawful discrimination. The Court disagrees and finds that a reasonable finder of fact

could not find for Plaintiff for the following reasons.  Contrary to Plaintiff's contention, the

evidence does not demonstrate that Plaintiff was more qualified than Stephens.  Rather,

the evidence establishes that, although Plaintiff may have received higher ratings than

Stephens with respect to one of the factors upon which the promotional decision was

based, overall he was not more qualified than Stephens.

Plaintiff has provided evidence in the form of CAP evaluation forms, which show

that the CAP gave Plaintiff more "acceptable" ratings than Stephens.  (Doc s. ## 42-11,

42-12, 42-13, 42-14, and 42-15.)  However, this evidence is insufficient to establish

pretext because the CAP was only one of many factors considered by Whitman.[14]  *See Jaramillo,* 427 F.3d at 1310 (finding that when the plaintiff is more qualified based on one of many factors in a promotion decision, the individual promoted may still be considered better qualified for the position than the plaintiff overall even though he scored lower on one factor).

Additionally, Plaintiff does not present any evidence to discredit the evidence presented by Defendant indicating that Stephens was more qualified based on other factors.  For example, the evidence demonstrates that Stephens was unanimously recommended by all six chiefs and five commanders for the position.  Only one of six chiefs and one of five commanders recommended Plaintiff for the position. Additionally, Defendant presents evidence of the fact that former supervisors of Plaintiff and Stephens recommended Stephens, not Plaintiff.  Plaintiff argues that this is pretext for unlawful discrimination because it is incoherent that the same supervisors who rated him as "excellent" on his evaluations, would find that he was unqualified for the position.

Because Plaintiff has not provided any evidence to show that Stephens's rankings were anything but "excellent," Plaintiff has failed to discredit Defendant's proffered reason for promoting Stephens, namely that Stephens was more qualified. It is also not incoherent that Quinones and Klee would recommend Stephens instead

---

[14]  Plaintiff argues that the CAP evaluation was the most important factor in the promotion decision because Whitman, in his deposition, said that the CAP evaluation was "10 out of 10" in importance.  Although this statement indicates that the CAP evaluation was one important factor, Whitman's statement does not preclude the possibility that other factors, such as the recommendations of the chiefs and commanders, were also considered to be a "10 out of 10" in importance.

of Plaintiff even though they had given Plaintiff ratings of excellent.  Klee states in her affidavit that she recommended Stephens because her dealings with Stephens "were all exemplary when he was a captain."  (Doc. 37-8 at 32.)  Quinones's affidavit states that he recommended Stephens because of his excellent performance in the criminal division.  (Doc. # 37-9 at 2.)  Additionally, both Klee and Quinones believed that Plaintiff needed to better review his own work.  (Doc. ## 37-8 at 25:12-22 and 42-7 at 3.)  Accordingly, the Court finds that there is no contradiction in fact that Quinones and Klee could find that both Plaintiff and Stephens deserved "excellent" ratings in their prior positions, but that they would deem Stephens better qualified for the particular position of Commander, which would reasonably require different or additional skills.

Plaintiff also attempts to demonstrate that he was more qualified than Stephens by presenting evidence that Stephens does not have a positive image because a civil jury found against Stephens on a wrongful death claim.  However, the Court notes that the particular incident occurred in 1995, twelve years before Stephens was promoted.  The fact that Defendant felt it unnecessary to deny Stephens employment opportunities because of an incident that occurred years earlier does not demonstrate that Defendant discriminated against Plaintiff.  Additionally, Stephens's affidavit, as well as Whitman's deposition testimony, indicate that the Denver District Attorney's Office and the Internal Affairs Bureau investigated the incident and found that Stephens's use of force was both reasonable and justified.  (Doc. ## 45-7 at 2, 42-3 at 138:11-17.)  Moreover, it is Plaintiff's burden to establish that Defendant's proffered reasons for promoting Stephens were pretextual.  Although positive image may have been a factor in the

promotion decision, Plaintiff has failed to demonstrate that it was the only factor or a determining factor in the decision.  Therefore, even if the Court assumes that Plaintiff was more qualified than Stephens on the positive image factor because of the incident occurring twelve years earlier, Plaintiff has failed to show that he was more qualified than Stephens overall.

Although Plaintiff's evidence demonstrates that he was qualified for the position, it does not indicate that he was more qualified than Stephens, much less overwhelmingly more qualified. *See  Jaramillo,* 427 F.3d at 1309 (citing *Bullington v. United Air Lines, Inc.,* 186 F.3d 1301, 1319 (10th Cir.1999) ("To show pretext, the disparity in qualifications must be 'overwhelming.'").  Therefore a reasonable jury could not find that Defendant's reason for selecting Stephens was pretext because Plaintiff has failed to prove that Defendant could not have believed in good faith that Stephens was at least as qualified as Plaintiff.  *See id.* (a reasonable jury could not infer pretext because the employer "could have believed in good faith that Mr. Sandoval was at least as well qualified as [the plaintiff] was.").  Furthermore, it is not the job of this Court to second guess the employment decisions of Defendant.  *Simms*, 165 F.3d at 1330.  For the aforementioned reasons, the Court finds that summary judgment in Defendant's favor is appropriate in regard to Plaintiff's Title VII claim concerning Decision # 4.

c)      *Plaintiff's Title VII Retaliation Claim*[15]

"Title VII forbids retaliation against an employee because she has 'opposed' any practice made unlawful by Title VII, or because she has "participated . . . in an investigation, proceeding, or hearing under this subchapter.'"  *Stover v. Martinez*, 382 F.3d 1064, 1071 (10th Cir. 2004) (quoting 42 U.S.C. § 2000e-3(a)).  In the absence of direct evidence of retaliation, courts analyze a retaliation claim under the *McDonnell-Douglas* burden-shifting framework.  *Id.*  To establish a prima facie case of retaliation, Plaintiff must prove that: (1) he engaged in protected activity; (2) the City took a material adverse action against him; and (3) there was a causal connection between the protected activity and adverse action.  *Montes v. Vail Clinic,* 497 F.3d 1160, 1176 (10th Cir. 2007).

The Court assumes that Plaintiff has established a prima facie case for retaliation based on Decision ## 3 and 4 insofar as Plaintiff engaged in the protected activity of filing the July 2006 and February 2007 EEOC Charges.  However, as set forth in detail

---

[15]  In their briefing on Defendant's Motion for Summary Judgment, both parties present arguments addressing the issue of whether Plaintiff was denied the opportunity for promotions in retaliation for filing the July 2006 and February 2007 EEOC Charges.  However nowhere in the Complaint or the Amended Complaint has Plaintiff asserted a claim for relief based on retaliation.  Although the retaliation claim was not properly brought before this Court in the Amended Complaint, the Court will nevertheless consider Plaintiff's briefing to be an amendment to his Complaint.  *See Viernow v. Euripides Dev. Corp.*, 157 F.3d. 785, 790 n.9 (10th Cir. 1998) ("Issues raised for the first time in a plaintiff's response to a motion for summary judgment may be considered a request to amend the complaint, pursuant to Fed.R.Civ.P. 15.").  This will not prejudice Defendant because Defendant thought Plaintiff had alleged a retaliation claim and fully briefed the issue in the Brief in Support of the Motion for Summary Judgment and in the Reply. *See Evans v. McDonald's Corp.*, 936 F.2d 1087, 1090-91 (10th Cir.1991) (finding that the plaintiff should not be barred from pursuing a claim not asserted in the complaint as long as it will not prejudice the defendant).

above, Defendant has proffered a legitimate non-discriminatory reason for those employment decisions and Plaintiff has failed to demonstrate that Defendant's reasons are pretextual.[16]  Therefore, summary judgment in Defendant's favor is warranted on Plaintiff's retaliation claims.

## C.    PLAINTIFF'S § 1981 CLAIM BROUGHT THROUGH § 1983

In addition to his Title VII claims, Plaintiff asserts a 42 U.S.C. § 1981 claim through the remedies provided by § 1983.

### 1.    Jurisdictional Prerequisites

Defendant asserts that Plaintiff is barred from proceeding on his 42 U.S.C. § 1981 claims for any alleged discrimination occurring before December 15, 2007, because Plaintiff's claims have a two-year statute of limitations.  Plaintiff responds that a four-year statute of limitations applies to his § 1981 claims.  As discussed below, a four-year statute of limitations applies to Plaintiff's § 1981 claims and, therefore, the claim is not time-barred.

"Section 1983 provides the exclusive remedy for damages against a state actor for claims which arise under Section 1981." *Bolden v. City of Topeka, Kan.*, 441 F.3d 1129, 1134 (10th Cir. 2006) (citation omitted).  However, the statute of limitations applicable to such claims is the § 1981 statute of limitations. *See Baker v. Birmingham Bd. of Educ.*, 531 F.3d 1336 (11th Cir. 2008).  The controversy of whether a two-year or a four-year statute of limitations applies to § 1981 was laid to rest in *Harris v. All-state*

---

[16]  As discussed above, Plaintiff has failed to exhaust his administrative remedies for all employment decisions except for Decision ## 3 and 4.

*Ins. Co.,* 300 F.3d 1183, 1188-89 (10th Cir. 2002).  *See Mitchell v. City & Cnty. of*

*Denver,* 112 F. App'x 662, 671 n.9 (10th Cir. 2004) (noting the Tenth Circuit's prior

resolution of the controversy). Although a two-year statute of limitations period applies

to claims arising under § 1981(a), a four-year statute of limitations applies to § 1981(b)

claims - the source of Plaintiff's claims.  *Id.*

       2.    <u>The Merits of Plaintiff's § 1981 Claims</u>

       Plaintiff asserts that Defendant's alleged disparate treatment of Plaintiff violated §

1981 and Defendant is liable for such a violation under § 1983.  The elements of a

*prima facie* case under 42 U.S.C. § 1981 are the same as for a *prima facie* case under

Title VII.  *Drake v. City of Fort Collins*, 927 F.2d 1156, 1162 (10th Cir. 1991).  As with

Plaintiff's Title VII claim, Defendant does not dispute that Plaintiff has stated a *prima*

*facie* case of disparate treatment under § 1981.  Defendant, however, asserts that

Plaintiff has not established municipal liability under § 1983, which provides the

exclusive remedy for violations of § 1981.

       Section 1983 provides that "[e]very person who, under color of any statute,

ordinance, regulation, custom, or usage of any State or Territory or the District of

Columbia, subjects, or causes to be subjected, any citizen of the United States or other

person within the jurisdiction thereof to the deprivation of any rights, privileges, or

immunities secured by the Constitution and laws, shall be civilly liable to the party

injured[.]" 42 U.S.C. § 1983.  To establish that an individual acted under the color of

state law and to hold a municipality liable under § 1983, Plaintiff must demonstrate that

the violation occurred pursuant to an official municipal policy or custom.  *Monell v. Dept. of Social Servs. of City of New York,* 436 U.S. 658, 691 (1978).

Defendant asserts, and the Court agrees, that Plaintiff has failed to provide evidence to show that Defendant's conduct amounts to a "custom."  To prove that Defendant acted pursuant to a **custom**, Plaintiff must establish: (1) a continuing, widespread, and persistent pattern of misconduct; (2) deliberate indifference to or tacit approval of the misconduct by policy-making officials after notice of the conduct; and (3) injury to the plaintiff as a result of the custom.  *Gates v. Unified Sch. Dist. No. 449 of Leavenworth Cnty., Kan.,* 996 F.2d 1035, 1041 (10th Cir.1993).  The plaintiff typically must offer evidence that similarly situated individuals were subjected to the same treatment.  *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008).

Although Plaintiff alleges that Defendant has failed to promote him on multiple occasions based on his race, Plaintiff admits that in 2003, two of the seven Commanders were Hispanic, and one of the two Deputy Chiefs was Hispanic.  (Doc. # 42-2 at 157:4-19.)  Plaintiff further admits that in 2006, only three of seven Commanders were Caucasian and one of two Deputy Chiefs was Caucasian.  (Doc. # 42-2 at 167:2-11.)  Furthermore, Fair, an African American female, was promoted instead of Plaintiff to Commander of District Five.  Although the Court recognizes that an employer might attempt to discriminate in favor of one race and against another race, Plaintiff has not provided evidence that Defendant discriminated against other individuals of Hispanic origin in making employment decisions.  In fact, the evidence shows the opposite.  Quinones, an individual who has been promoted to Commander

and Division Chief, is a man of Hispanic origin, like Plaintiff.  Thus, Plaintiff has failed to

provide evidence of racial discrimination against Hispanic individuals that is so wide-

spread as to constitute a custom.

Plaintiff also alleges that (1) Chief Whitman is a final decision maker, and

(2) Chief Whitman's decisions not to promote Plaintiff constituted a policy that imposes

municipal liability on Defendant under § 1983.  A municipality may only be held liable for

acts which: (1) the municipality officially sanctions; (2) are made by officials with "final

decision making" authority; and (3) were "taken pursuant to a policy adopted by the

official or officials responsible under state law for making policy in that area." *Randle v.*

*City of Aurora*, 69 F.3d 441, 447 (10th Cir. 1995) (citing *City of St. Louis v. Praprotnik*,

485 U.S. 112, 123 (1988)).  Unlike liability based on a municipal custom, "municipal

liability [based on a policy] may be imposed for a single decision by municipal

policymakers under appropriate circumstances."  *Pembaur v. City of Cincinnati*, 475

U.S. 469, 480 (1986).  However, if the municipal official responsible for the action has

discretion only over that particular decision, the exercise of that discretion is not enough

to impose municipal liability.  *Id.* at 482.

The Court finds that Plaintiff has failed to establish municipal liability because

Plaintiff's evidence does not indicate that Whitman is a final decision-maker.  The Tenth

Circuit has identified three factors for determining whether someone is a final decision

maker: (1) "whether the official is meaningfully constrained 'by policies not of that

official's own making;' (2) whether the official's decision[s] are final – *i.e.*, are they

subject to any meaningful review; and (3) whether the policy decision purportedly made

by the official is within the realm of the official's grant of authority." *Randle*, 69 F.3d

at 448.

Defendant presents evidence that Whitman is not a final decision-maker through

a copy of the city charter which states that Whitman's decisions are subject to review by

the Manager of Safety and the Mayor.  (Doc. # 37-12 at 2.)  However, this does not

establish that the review is meaningful.  (*Id.*)  Plaintiff argues that the review of

Whitman's decisions is not meaningful, which is one factor considered in determining

whether an individual is a final decision-maker.  Plaintiff supports this argument with

evidence that the Manager of Safety has never declined to support an employment

decision of Whitman.  (Doc. 42-3 at 80:9-11.)  Based on this evidence, it is arguable that

Whitman's decisions are not subject to meaningful review, however, it could also

indicate that Whitman has consistently made good decisions with which the Manager of

Safety agrees.  Although the Manager of Safety has never vetoed a decision made by

Whitman, this does not necessarily prove that his decisions are made with a rubber

stamp.

The Supreme Court has found that an individual's decisions represent a policy

when the defendant municipality delegates its power to establish the final employment

policy to that individual.  *See Pembaur,* 475 U.S. at 494 n.12.  The Supreme Court has

additionally found that an individual's discretion to make employment decisions, *i.e.*

hiring or firing decisions, is not a municipal policy unless that individual was delegated

the authority by the municipality to establish a final employment policy, *i.e.* the criteria or

factors considered in the making of the employment decision.  *See id.* (finding that "the

County Sheriff may have discretion to hire and fire employees without also being the county official responsible for establishing county employment policy.")  Plaintiff asserts that Whitman possesses "final authority under law to establish policy with respect to promotions to command level decisions."  (Doc. # 17 at 10.)  However, Plaintiff presents no evidence that Whitman establishes the employment policies which guide promotional decisions.  Here, Whitman is constrained in his employment decisions by an employment policy that states how many individuals may be promoted, what rank an individual must hold to be considered for a promotion, and the various criteria that are evaluated during the selection process.  (Doc. ## 37-12 and 37-13 at 1.)  Plaintiff has failed to present evidence that Whitman was the individual who created those employment policies or that Whitman was not constrained by those policies.  Plaintiff has presented evidence only that Whitman is given the discretion to make promotional decisions, however, "discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion."  *Pembaur*, 475 U.S. at 482; *see also Novitsky v. City of Aurora*, 491 F.3d 1244, 1260 (10th Cir. 2007) (finding that no reasonable jury could infer an unconstitutional municipal policy without more than the plaintiff's assertion that the defendant gave its officers discretion to use a twist lock).  Therefore, the Court finds that a rational finder of fact could not find that Whitman is a final policy-maker.  As a result, Plaintiff has failed to establish municipal liability under § 1983 and summary judgment in favor of Defendant is appropriate on the § 1981 / § 1983 claims.

## III. **CONCLUSION**

The Court finds that summary judgment in Defendant's favor is warranted. Plaintiff's 2004, 2006 and 2008 claims concerning Decision ## 1, 2, 5, 6, and 7 are barred for failure to exhaust administrative remedies.  Additionally, Plaintiff has failed to present evidence sufficient to establish the pretextual nature of Defendant's legitimate, non-discriminatory reason for not promoting him.  Additionally, summary judgment is also warranted on Plaintiff's § 1981 claim because Plaintiff has failed to establish municipal liability under § 1983.

Accordingly; IT IS ORDERED THAT:

(1)     Defendant's Motion for Summary Judgment (Doc. # 37) is GRANTED;

(2)     This case is DISMISSED WITH PREJUDICE; and

(3)     The Final Trial Preparation Conference set for September 16, 2011, and the Five-Day Jury Trial scheduled to commence on September 26, 2011, are VACATED.

DATED:  September   02  , 2011

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge